AO 106 (Rev. 04/10) Application for a Search Warrant         AUTHORIZED AND APPROVED/DATE:s/Daniel Gridley 10-10-2024

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. M-24- 767 -SM
A Samsung cellular phone, model number )
SM-S928U, serial number RSCX401BN9B, with assigned )
phone number (479) 561-9285, currently in secure storage of )
the FBI located at 3301 W. Memorial Rd., Oklahoma City. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the ___Western___ District of ___Oklahoma___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a)&(d) | Armed Bank Robbery |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kalli Wakefield, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/10/24

*Judge's signature*

City and state: Oklahoma City, Oklahoma     SUZANNE MITCHELL, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Kalli Wakefield, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI), and have been so employed since September, 2022. I am currently assigned to the Violent Crime Squad of Oklahoma City Division of the FBI, and have been assigned to that squad for approximately three (3) months. As a Special Agent with the FBI, I am a law enforcement officer of the United States as defined by 18 U.S.C. § 2510(7), meaning that I am empowered by law to conduct investigations of and to make arrests for violations of Federal law, including violations of the Major Crimes Act (MCA). During my time as a Special Agent, I have participated in numerous criminal investigations as the primary investigator or in a backup capacity.

2. Further, I am a federal law enforcement officer who is engaged in enforcing the criminal laws of the United States, including 18 U.S.C. § 2113(a) (bank robbery). I am authorized to investigate violations of the laws of the United States, and to execute warrants issued under the authority of the United States.

3. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant of the property specifically described in Attachment A for the items specified in Attachment B hereto. Based on the information set forth herein, I have probable cause to believe that contraband and evidence of a crime, fruits of a crime, and instrumentalities of violations of Title 18, United States Code, Sections 2113(a) are located in or on the device: a Samsung cell phone, model number SM-S928U, serial number RSCX401BN9B (the "TARGET DEVICE"), with the associated phone number 479-561-9285.

I submit this application and Affidavit in support of a search warrant authorizing a search of the TARGET DEVICE, as further described in Attachments A and B, which is located in the Western District of Oklahoma in FBI storage location.

4. Located within the TARGET DEVICE to be searched, I seek to seize evidence, fruits, and instrumentalities of the foregoing criminal violations as further described in Attachment B hereto.

5. The statements contained in this affidavit are based in part on: information provided by other agencies, written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; independent investigation; and my experience, training, and background as a Special Agent with the FBI. Because this affidavit is being submitted for the limited purpose of securing authorization for the requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish that evidence of a crime in violation of 18 U.S.C. § 2113(a) (Bank Robbery) is presently located in or on the TARGET DEVICE.

## BANK ROBBERY INVESTIGATION

6. On July 5, 2024, an unknown male subject entered the FNB Bank located within Harps Grocery Store at 20941 SE 29th Street, Harrah, Oklahoma at approximately 1531 hours.[1] The subject attempted to open the door to the bank managers office. The door was locked so the subject walked to the counter where the tellers sat. The subject brandished a semi-automatic

---

[1] This FNB bank is located in the Western District of Oklahoma and its deposits were insured by the Federal Deposit Insurance Corporation (FDIC) on July 5, 2024.

2

pistol, which appeared to be a black Glock pistol with a silver slide, and told the tellers to put the money in the bag. The subject handed the teller a white plastic bag with his left hand and held the pistol in his right hand. The subject kept telling the tellers to not press any buttons while pointing the gun at the tellers. The tellers put as much money into the bag as they could. Money from two (2) drawers was put in the bag. The robber collected the bag and departed the store with approximately $12,123 in U.S. currency. The subject wore a black mask, only exposing his eyes, during the robbery and was not wearing gloves. The subject was then seen departing in a white Hyundai Elantra bearing an Oklahoma license plate KVE 869.

7. The license plate indicated the vehicle was registered to a residence located at 17190 Becker Road, Newalla, Oklahoma. Shortly after the robbery, the Hyundai Elantra was found parked behind the house located at 17190 Becker Road, Newalla, Oklahoma by deputies with the Cleveland County Sheriff Department (CCSD).

8. When deputies with the CCSD arrived at the residence located at 17190 Becker Road, Newalla, Oklahoma, they observed a woman standing outside. This woman, later identified as Jennifer Campbell, was standing near a Chrysler 200 bearing an Arkansas license plate 548 TYG, that was parked in front of the residence.

9. A white GMC arrived at the property at approximately 1823 hours. The male in the GMC was identified as Byron Kirk Gray. Gray was previously convicted of a felony in 1989 for which he served a term of imprisonment exceeding one year.

10. When securing a perimeter around the house, a law enforcement officer saw, in plain sight, clothing on the backseat of the Hyundai Elantra and in plain sight, a black semi-automatic pistol with a silver slide, believed to be the same pistol used in the robbery, on the driver's side seat of the Chrysler 200.

11. When Campbell was interviewed by law enforcement, she gave verbal consent for law enforcement to search her phone. Within the contents of her phone, law enforcement found contacts for Byron "Kirk" Gray (Byron), 405-219-8195, Brian Mays, 479-561-9285, and Alston Taylor, 479-561-7738.

12. Campbell also stated that Gray has a brother named Brian Mays (MAYS) who often stays at the residence. Campbell explained to deputies that she had sold the Elantra to MAYS around six months ago, but he never changed the title over to his name. Campbell said the property's "ranch hand," Alston Taylor, was called prior to deputies' arrival by either Gray or MAYS and was told to move the Elantra around to the back of property. Campbell stated that she was contacted by Gray several minutes prior to the deputy's arrival and instructed to go check the Elantra for money. Gray had instructed her to drive the Chrysler parked in front of the residence to the neighbor's house until officers left. Investigators were able to see through the window into the Chrysler and observed what appeared to be a silver slide pistol, similar in style to what was used in the bank robbery. Campbell was asked who owned the Chrysler, and she replied it was Gray's vehicle.

13. While speaking with investigators, Campbell stated that Gray had left the house to go to the feed store, but before he left, he told her to be ready to go in about an hour and a half to go to the Grand Lake Casino, in Grove, Oklahoma, to pick up money. Campbell told investigators the day before the bank robbery MAYS asked for a ski mask. However, she claimed to not know anything about the bank robbery. When shown a photo of the robbery suspect from surveillance footage at the bank, Campbell immediately stated there is no way there subject was Gray. She explained that the suspect was wearing what appeared to be a dark blue Carhartt pullover and that Gray is a Blood gang member and would never wear blue clothing.

4

14. Investigators spoke with Gray, and he advised he had woken up 2:30 p.m. on July 5, 2024. Gray had Campbell fix him breakfast and then left his residence around 4:30 p.m. to go to Shawnee Feed Center in Shawnee, Oklahoma. Gray mentioned that when he was leaving his residence, he saw his brother, MAYS, and asked him if he wanted a ride. According to Gray, MAYS got into Gray's white GMC Tahoe and rode with him to Shawnee. Gray stated while they were driving, MAYS made a statement "I did it, Kirk (Gray's first name). I can't believe how easy it was. I did it." Gray asked, "You did what?" MAYS replied, "I took down a bank." Gray told investigators he did not believe MAYS because MAYS never showed him money. Gray said he told MAYS if he got money, he needed to pay him $3,000, which MAYS owed to Gray. Gray said he never got paid by MAYS. When Gray and MAYS left the feed store, Gray stated he dropped MAYS off at the Walmart Super Center in Shawnee, Oklahoma, so he could send money to his girlfriend. Gray said it was odd because he asked MAYS if he wanted him to wait to take MAYS back to the house and MAYS told him, "No." Gray asked MAYS if he was coming back to the house to get his vehicle, the Elantra. MAYS told him he would be back eventually to get it.

15. Gray was shown a photo of the bank robbery suspect. Gray told investigators he had seen two similar pistols to the ones seen in the photo the suspect had during the bank robbery. Gray said MAYS had a Smith and Wesson 9mm with a silver slide and Taylor had a pistol with a silver slide that was a 40 caliber.[2] Gray described MAYS as 6' and weighed around 260 pounds, which was consistent with robbery suspect.

---

[2] During investigator's conversation with Campbell she voluntarily showed investigators a photo on her phone which depicted Alston Taylor, the "ranch hand" for the property, with a pistol with a silver slide. Taylor often stayed at Gray's residence.

5

16. On July 11, 2024, Task Force Officer Matthew Stephenson went to the Walmart Super Center in Shawnee, Oklahoma, where Gray had stated he and MAYS went on the day of the bank robbery. The Walmart's surveillance footage from July 5, 2024, showed Gray's SUV with the livestock feed on the back of the trailer pull up to the front of the entrance and MAYS exit the front passenger seat of Gray's vehicle and walk into the Walmart. MAYS then transferred $3,048.00 dollars through Money Gram to an unknown individual. After MAYS transferred the money, he purchased a jar of Vaseline. While MAYS was paying, the camera recorded MAYS pulling a large amount of cash from his pocket. MAYS then walked out to the Walmart parking lot and got back inside of the Gray's SUV and left with Gray.[3]

17. On or about August 8, 2024, MAYS was found in Arkansas and arrested for the bank robbery that occurred on July 5, 2024, in the Western District of Oklahoma. MAYS'' phone (the TARGET DEVICE) was seized upon his arrest and Mays confirmed the target device was his phone. Mays indicated that his phone has not had service since July 2024, but he continued to use this phone through accessing WiFi.

18. Based on my training and experience, I know that bank robbers and other criminals often leave or store evidence of the crime on their devices including photographs, text message conversations, phone call logs, and other applications that were accessed before, during, and after the time of the crime. When the TARGET DEVICE was provided to law enforcement, it was stored in a manner in which to preserve evidence on the TARGET DEVICE and has been

---

[3] While this appears to be contradictory to Gray's statements to law enforcement, MAYS never returned to the residence with Gray on July 5, 2024, and cell phone data indicated that MAYS stayed in the area of the Walmart for a couple hours on July 5, 2024.

stored at the FBI since being given to law enforcement. As such, I believe that the aforementioned types of evidence are still contained within the TARGET DEVICE.

## CONCLUSION

19. Based on the foregoing, there is probable cause to believe that the federal criminal crimes of armed bank robbery and felon in possession of a firearm have been committed in violation of 18 U.S.C. § 2113(a) and that the contraband, property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are located on or within the TARGET DEVICE, described in Attachment A. A previous warrant was issued for the TARGET DEVICE but has not been executed within the required time due to a backlog of requests for digital devices. I respectfully request that this Court issue a search warrant for the TARGET DEVICE, authorizing the search and the seizure of the items described in Attachment B.

Respectfully submitted,

_____
Kalli Wakefield
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on __OCTOBER 10__, 2024.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant seeks to search a Samsung cell phone, model number SM-S928U, serial number RSCX401BN9B, with assigned phone number 479-561-9285.

## ATTACHMENT B

## **LIST OF ITEMS TO BE SEIZED**

This warrant authorizes a review of electronic storage media seized, electronically stored information, communications, other records and information seized, copied, or disclosed pursuant to this warrant in order to locate any evidence, fruits, and instrumentalities of violations of the above-listed federal criminal statutes. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

1. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to 18 U.S.C. § 2113(a) (bank robbery).

3. Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by the operator of the device or by other means for the purpose of committing a violation of 18 U.S.C. § 2113(a) (bank robbery).

4. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons involved with violations of 18 U.S.C. § 2113(a) ( bank robbery).

5. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic

messages, other digital data files and web cache information) concerning violations of 18 U.S.C. § 2113(a) ( bank robbery)

6. Any and all visual depictions of firearms and ammunition, including photographic and video depictions.

7. Any and all visual depictions of money, U.S. currency, banded bills, including photographic and video depictions.